# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   5:20-cv-01707-SB-SHK | Date:   12/21/2021 |

Title:   *Line-X LLC et al. v. Christopher W. Tefft et al.*

Present: The Honorable   **STANLEY BLUMENFELD, JR., U.S. District Judge**

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[Minutes] ORDER HOLDING CHRISTOPHER W. TEFFT AND LINE-X OF THE DESERT, LLC IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH A COURT ORDER**

On February 22, 2021, the Court granted an application for default judgment filed by Plaintiffs LINE-X Franchising LLC and LINE-X LLC against Defendants Christopher W. Tefft and LINE-X of the Desert, LLC.  Dkt. No. 34.  As part of the default judgment order, the Court issued a permanent injunction that ordered Defendants to cease:

1. using the mark and trade name "LINE-X" or any similar mark or trade name that is likely to cause confusion, mistake, or deception therewith, in the sale distribution, or advertising of truck bed liners or similar merchandise or services at or concerning the premises at 19020 North Indian Canyon Drive, Suite 1A, North Palm Springs, California or at any other locality in the United States;

2. operating or doing business under the name of "LINE-X" or "LINE-X of the Desert";

3.  representing to the public that Tefft's terminated franchise agreement with LINE-X is still in force, that Defendants or any business of Defendants is affiliated with LINE-X, or that Defendants are authorized to use the LINE-X mark or name in any respect;

4.  using Defendants' marks, name, symbol, sign or indicia, including but not limited to the LINE-X mark "LINE-X"; and

5.  using or adopting any work orders, purchase orders, receipts, invoices, guarantees, reports, or other papers or objects on which any LINE-X name or mark is imprinted.

*Id.* at 11.  The Court awarded Plaintiffs $14,817 in attorneys' fees and $645.96 in costs as part of the default judgment order, for a total of $15,462.96.  *Id.*

After Defendants continued to use Plaintiffs' trademarks and refused to remove the LINE-X marks from their online marketing materials and business name while ignoring Plaintiffs' informal efforts to obtain compliance, Plaintiffs moved, on September 28, 2021, for an order to show cause (OSC) why Defendants should not be held in civil and criminal contempt for their failure to comply with the permanent injunction.  Dkt. No. 48-1.  The Court declined to consider the "more severe infractions of criminal contempt, " *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983), but issued an OSC re: civil contempt on November 8, 2021, with a hearing set for December 17, 2021.  Dkt. No. 49.  The OSC ordered Defendants to appear at the hearing and gave Defendants time to file an opposition.  The OSC warned Defendants that "[f]ailure to comply with this order to show cause may subject Defendants to contempt sanctions, including monetary sanctions."  *Id.* at 4.

Despite the warning, Defendants did not file an opposition and did not appear at the hearing on December 17, 2021.  Plaintiffs' counsel confirmed that he properly served Defendants, *see also* Dkt. Nos. 52, 53, 54, 55, 57, and stated that he also made informal efforts (by email) to notify Defendants of the hearing. Counsel described how Defendants remain unresponsive, that the injunction is still being violated, and that Plaintiffs' business continues to be negatively affected by Defendants' conduct.

Civil contempt occurs "when a party fails to comply with a court order." *General Signal Corp. v. Donallco, Inc*., 787 F.2d 1276, 1379 (9th Cir. 1986). Failure to comply need not be intentional.  *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (contempt "need not be

willful, and there is no good faith exception to the requirement of obedience to a court order"). The purpose of civil contempt is "to compel obedience to a court order . . . or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770, 778 (9th Cir. 1983) (internal citations omitted). "Failure to obey the terms of a[n] . . . injunction constitutes a contempt of court." *Chiquita Fresh, N.A., L.L.C. v. Pandol Assocs. Marketing, Inc.*, No. CV 5 07-1305 LJO DLB, 2008 WL 324009, at *1 (E.D. Cal. Feb. 5, 2008) (citing *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994)).

Here, Defendants have clearly failed to obey the terms of the Court's permanent injunction by continuing to use "LINE-X" trademarks and doing business under the name of "LINE-X" and "LINE-X of the Desert." As described above, Defendants were afforded the requisite due process before the imposition of civil contempt sanctions. *See In re Pekrul*, No. BAP AZ-12-1544, 2013 WL 3942970, at *5 (B.A.P. 9th Cir. July 22, 2013) ("[D]ue process in a civil contempt proceeding solely requires adequate notice and an opportunity to be heard.").

Thus, the Court hereby **holds Defendants in civil contempt**. The Court **orders** Defendants to pay a daily fine of $200 for each day that Defendants continue to violate the permanent injunction set forth above and in the default judgment order. The Court imposes this daily fine on Defendants under its power to issue "coercive civil sanctions." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016); *see also id.* (stating that "[a] court may wield its civil contempt powers . . . 'to coerce the defendant into compliance with the court's order'") (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). Defendants can avoid the fine by complying within 24 hours of service of this order. Otherwise, the daily fine will be imposed until Defendants comply.

After the OSC hearing, Plaintiffs' counsel submitted a declaration setting forth the additional attorneys' fees ($17,224.50) and costs ($840.68) incurred in connection with this matter since the default judgment order. Dkt. No. 58. The declaration is supported by exhibits containing detailed explanations of the work completed and time spent by Plaintiffs' counsel. *Id.* Finding the requested fees and costs reasonable, the Court **orders** that Plaintiffs are entitled to a total of $18,065.18 in fees and costs. Added to the $15,462.96 in fees and costs that the Court awarded to Plaintiffs in granting the motion for default judgment, the Court **awards** Plaintiffs a total of $33,528.14 in connection with this case.

**IT IS SO ORDERED**.